Good morning, Your Honors. May it please the Court, my name is Brianna Fuller, and I represent Terrance Hadnot. Your Honors, the government's argument at the suppression hearing in this case rose or fell on the testimony of Officer Corey, the officer who gave the go-ahead to search Mr. Hadnot's house. His testimony was fundamentally inconsistent with that of fellow officers on a crucial issue. The District Court clearly erred in accepting the government's version of events, given the vast inconsistencies between the government's witnesses' case, and for that reason the case should be reversed and remanded. Let me ask you a question that just hit me as I was reading this, which has nothing to do with this. Why didn't anybody just look at the phone records? Your Honor, I can't say why that didn't happen. I mean, if they looked at the phone records, we'd know what record went first and what went second. That's simply not in front of the Court. I understand that. Well, the search happened about three or four hours later, didn't it? It did happen about – the interview happened at 6.30, 6.45. The search happened at 9.30. Yeah. I guess my biggest problem with your case is Inkson, and I helped write that, so there's where I am. It says, Inconsistent testimony does not establish clear error unless the district court's inferences and credibility determinations are implausible and without support in the record. And I have two – And I guess this is my worry. I can go through this record. I can have all kinds of thoughts about what says who and who says what and where they are, but I've got a DJ who's sitting down there, who's listening to all this, who's doing what he needs to do, and I'm having a tough time saying that his inferences, which he said some were credible and some weren't, and his credibility determinations were implausible. I have two responses to that. I think that certain aspects of the testimony simply were implausible, given the facts. One, that because Probation Officer Tatley said that he had – that Officer Corey said he had already interviewed Ellis and that he – that Ms. Ellis had told him certain things, it's implausible to believe that Officer Corey's testimony is correct when he says that he called the Probation Officer before he interviewed Ms. Ellis. Well, I thought Officer Tatley said, I don't know when he called, but he was still awake at the time. He said, and you're correct, he said he had no idea, not even a ballpark of when he called. And he also said he hadn't interviewed the girlfriend when he spoke to Corey. Officer – Probation Officer Tatley said in his declaration that he had – that Officer Corey told him – I'm sorry, we're getting into several levels of hearsay, but Officer – Probation Officer Tatley said that Officer Corey told him that he had interviewed Ellis and that Ellis had told him certain things, things that presumably he did not know before he interviewed Ms. Ellis. So I do think it's implausible, his testimony, that he must have called the Probation Officer before he interviewed Ms. Ellis. And remember, the basis of that testimony was not a specific memory that he had or that he had contemporaneous records that documented that. It was simply that that was his general practice. And given that we have specific testimony that contradicts a general practice, it seems that the specific testimony should prevail. Let me get back to your point about Hinkson, because I do think this case is different than Hinkson. Hinkson says that if there's two versions of facts, each of which are plausible, facially plausible, facially valid, inherently cohesive, that the district court can't be wrong in choosing one of those two versions of facts. This is a case, though, where the district court had the government's version of facts. It didn't specifically recognize that the government's witnesses were internally incoherent, that they all could not be telling the truth. Their versions of facts were incoherent internally. And so it's a different case than saying, well, here's these two plausible versions, and I'm picking one of them. This is a case where the government's version didn't hang together internally. And I think that's where this case varies from Hinkson. I don't know if that addressed your point, but I do. Well, that's a tough case, tough case for you, and I put it right to you. Okay. All right. The testimony, the time of the search, and the fact they waited for a photographer, all protocol for probation searches, doesn't that demonstrate that this is a probation search? Your Honor, I think it's clear that the government thought it was a probation search, or that the officers on the ground thought it was a probation search. Well, what I'm looking at is the evidence, the testimony that we have in the record, the time of the search, and the fact they waited for the photographer, which are all part of the protocol of the probation search. Now, doesn't that demonstrate this is a probation search? It demonstrates that they were trying to do a probation search. It doesn't mean that they necessarily complied with all of the requirements of a probation search, however. Again, Officer Tatley said he didn't remember whether they called him. He couldn't even give a ballpark figure. It could have been after 930. It could have been an officer who simply forgot one of the requirements of a probation search and was trying to post hoc justify that search by calling Officer Tatley after 930. The district court's notion that there was enough time to do things right, and so things must have been done right, is simply, there's no guarantee that simply because the police had the time to do it that they necessarily did it right. The other thing to remember is that there was a murder investigation going on. I mean, this was a felon in possession case. It was really a sideshow to the main event, which was that there's, you've got a person who's been shot that stumbled into that house. You've got people who were witnesses or who were at least in the scene. And so I think for that reason, because there was this other commotion going on, the fact that there was plenty of time for things to happen right doesn't necessarily mean that they did. I guess the other case that worries me with you is Anderson v. Bessemer, where it says, in effect, when a trial judge's finding is based on his decision to discredit the testimony of one or two witnesses, each of whom is told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding can virtually never be clear error. I think that, again, the difference here is that this wasn't a case where the district court said, I have the testimony of Officer Corey, I have the testimony of Probation Officer Tatley. I'm disbelieving that Tatley, when he said that Corey told him these things. This was a case where the government said, I accept the government's analysis, whole cloth, without recognizing that there were significant inconsistencies within the government witness's version of events. This isn't where you have the defendant on one side, the government on the other, and the court goes with the government witnesses. This is a case where internally the government witnesses were not coherent. If I could, I'd like to reserve the last two minutes of my time. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Corey Yee on behalf of the United States. Your Honor, frankly, the appellant's focus on this inconsistency, which is not pivotal or fundamental in this case, is really the sideshow of the main focus here. The main focus here is that the district court made a finding based on what is on the record, and the inferences based on the record are plausible and logical. And as Your Honor... Speak up. I'm sorry. I want to make sure Judge Fletcher can hear you and we're having a tough time. Well, I'm finding her very clear, so... Good. Good deal. Good. As Your Honor has mentioned, the evidence is overwhelming on the record. The whole incident started around 530. Officers were called. Around 630 or 645, and this is not disputed, that's when the interview started of the potential suspects then, which were defendant and his girlfriend, Ellis. They were potential murder suspects. Detective Corey testified that based on his pattern and practice, he checks the background of the potential suspects. And he also testified to a criminal history that he reviewed while he was testifying that the record, the rap sheet alone, showed that he checked the background at around 617. Now, there was a notation that the rap sheet said 517, which would be not possible because the incident didn't occur until 530. He testified that this was an hour off and the defense did not dispute. So at 617, there was a criminal history check. So that supports Detective Corey's testimony that the background check was done before the interviews. And based on the video, the whole interview of both Ellis and the defendant lasted about 35 minutes. So if the interview started around 630 or 645, they ended around 720 at the latest. And Detective Corey said that he believes that he called, based on his pattern and practice, Probation Officer Catley before the interview. Now, it is true that there is an inconsistency. Probation Officer wrote in his declaration that when Detective Corey called me, he said that Ellis, he interviewed Ellis, and there was a gun in the house potentially. There is an inconsistency there. But this is rationally explainable. Detective Corey testified based on his pattern and practice, and he is saying that he believes that he called before he interviewed Ellis. Here's Probation Officer Catley saying that he believes that he received a call after. Now, Probation Officer Catley could have received multiple calls, and he did indeed receive multiple calls from Corey, and there could have been multiple conversations. Detective Corey could have misremembered the timing. However, this inconsistency that the appellant really relies on is not the main focus. It's not pivotal, and it's not fundamental. Why? Because whether it happened before or after, the search in and of itself occurred after 930, 930 or after, and this is not disputed. And Detective Verschuren testified specifically, I knew about the search terms before I conducted the search, before I directed my officers to conduct the search. I either heard it from Detective Corey or through Detective Stark, my boss, who communicated with Detective Corey. That's not disputed. Well, it seems to me that your opposition's total argument is based on the idea that in Anderson it says, if they tell a coherent and faciably plausible story, uncontradicted by extrinsic evidence, we don't have a chance. But in this case, it isn't uncontradicted by extrinsic evidence. Exactly. It's contradicted. So therefore, even on clear air, you can't win. And that is my point. There is nothing extrinsic that really contradicts the finding of the district court. The district court says the police officers, based on all the evidence on the record and what he heard, all the testimonies, the police officers knew about the search terms before they conducted the search, and therefore, this is a valid probation search. There's nothing in the record that specifically contradicts that. There's nothing in the record that says, or any testimony that says, no, we didn't know about the search condition before we did the search. There's no document that says the search was based only on consent or something else. There's nothing like that, and that is exactly my point, Your Honor. And if there's no other questions, I have nothing further. Thank you very much. You have a couple of minutes, Counselor. I just have two quick points. Verschuren's testimony that he knew that the conditions for a probation search were met is really only as good as Corey's testimony, in my mind, because he was, excuse me, he was receiving. Well, he was at the scene, wasn't he? He was at the scene, but he had no independent knowledge about the probation, that whether Mr. Hadnot was on probation. Well, I thought he said he did say. I thought his declaration does say he's aware that the defendant was on probation before the search. He says, Officer Corey told me he was on probation and that this was going to be a valid probation search. But his information is essentially derivative of that of Officer Corey's, and so if Corey's knowledge is bad, then I don't think anyone at the scene can be said to have better knowledge than Officer Corey. Well, and that's where I got the idea that that's the reason he waited for the photographer, because he knew what the probation search protocol would suggest. He waited because Corey told him that it was going to be a probation search, not that he had some kind of independent knowledge. There's nothing in the records that suggests that he called or did any investigation on his own. He was getting his information through Corey. The second quick point I'll make is about the timing of the communications. You know, the government says, well, maybe there could have been a call later. Maybe there were multiple calls. There's just nothing in the record that indicates that. Detective Corey at ER 34 says, I called individuals on the scene before I interviewed Ellis.  And then I stepped out and made two phone calls to the scene, at which point I talked to the supervisor, Deanna Stark. There's simply no record that there was additional communications later on in the night. And Corey was very – I mean, he was vague at some points, but he was very specific on one thing, which was that in that moment when he was in the room with Ellis and he texted the scene, he was giving them authorization to search. He immediately stepped out of the room about five minutes later. He made two phone calls. At that time is when he said, yes, he's on probation and there's a search condition. So the fact that there might have – I mean, this hypothesis that there might have been additional calls later simply isn't supported by the record. My time is up. Thank you. I suppose that you're giving up on this second issue. I am, Your Honor. I should have mentioned that previously. I thought so, but I just want to make sure. Thank you very much. Good argument. This is Case 10-50252, United States of America v. Hadnot.
judges: Brewster, Fletcher B. , Smith N. R.